IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 18-cr-30016 |
| ) | |
| **DOMINIC HOOD,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Dominic Hood's Amended Motion for Compassionate Release (d/e 163) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

**I. BACKGROUND**

On May 24, 2018, Defendant pleaded guilty to a single-count indictment charging him with Aiding and Abetting the Distribution of 5 Grams or More of Actual Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).  On October 15, 2018, the undersigned district judge sentenced Defendant to the statutorily required mandatory minimum term of imprisonment of

120 months. Minute Entry, October 15, 2018. An 8-year term of supervised release was also imposed.

Defendant is currently serving his sentence at FCI Greenville, in Greenville, Illinois. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed October 23, 2020). Defendant's projected release date is August 19, 2026.

On September 16, 2020, Defendant filed a pro se motion for compassionate release (d/e 149) pursuant to 18 U.S.C. § 3582(c)(1)(A). On October 13, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release (d/e 163) was filed. Defendant requests compassionate release due to his health issues and the COVID-19 pandemic. According to Defendant's amended motion and the medical records that have been produced in this case, Defendant has been diagnosed with chronic kidney disease, as well as obesity and hypertension.

If released from custody, Defendant proposes to reside with his mother at her home in Quincy, Illinois. Am. Mot. Compassionate Release 21. The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum

(d/e 157), concluding that Defendant's mother's residence is suitable.

On October 23, 2020, the Court held a videoconference hearing on Defendant's motion. Defendant appeared by video from FCI Greenville. The Court heard oral arguments from counsel and a statement made by Defendant.

As of October 23, 2020, the Bureau of Prisons (BOP) reports 172 active confirmed inmate cases of COVID-19 and eight active confirmed staff members cases of COVID-19 at FCI Greenville. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed October 23, 2020). At the time Defendant filed his pro se motion for compassionate release, BOP reported only two inmate and ten staff member cases of COVID-19 at the facility.

The Government objects to Defendant's motion, arguing that this Court lacks jurisdiction to hear Defendant's motion as Defendant has not fully exhausted his administrative remedies under § 3582(c)(1)(A). The Government also argues that Defendant's motion should be denied on the merits considering Defendant's criminal history. The Court finds that it has

jurisdiction to hear Defendant's motion and that Defendant has satisfied the requirements for compassionate release.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

It is disputed whether Defendant pursued administrative relief prior to filing his motion with the Court. The Government argues in its response to Defendant's Amended Motion for Compassionate Release that Defendant has not pursued administrative relief through BOP as required by statute. Resp. 4-5. At the hearing on the Amended Motion for Compassionate Release, Defendant's appointed counsel advised the Court that Defendant told counsel that Defendant had sent an email to the warden of his facility seeking compassionate release but was unsure of the date.

Defendant did state, however, that the email was sent to the warden prior to Defendant's diagnosis with COVID-19, which occurred on October 2, 2020. Defendant claimed that he never received any response to the email, so he next went to his counselor to obtain any form he might need to fill out to seek compassionate release. Defendant claimed that he filled out the form he was provided and returned it to the counselor, but again never received any response.

The Court heard the additional information provided at the hearing and found it to be credible. For that reason, the Court concludes that Defendant has exhausted his administrative remedies as required by statute. Even if Defendant has not exhausted administrative remedies, the Court would find, as it has previously, that the exhaustion requirement is excusable and would excuse Defendant's failure to exhaust.

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment

and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

    1.    <u>Extraordinary and Compelling Reasons for Release</u>

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Social distancing can be difficult for individuals living or working in a prison.

Defendant is a thirty-three-year-old African American male who has been diagnosed with chronic kidney disease (Stage 1), as well as obesity and hypertension. While he has been in BOP custody, Defendant has also had eye surgery to correct a detached retina and a thyroidectomy.

On October 6, 2020, the Centers for Disease Control and Prevention (CDC) revised its guidelines concerning persons who are at higher risk for severe illness from COVID-19 based on the

available evidence.[1]  According to the most recent information from the CDC, having chronic kidney disease of any stage increases the risks of severe illness from COVID-19.[2]  The most recent guidance from the CDC also indicates that individuals with a body mass index (BMI) of thirty or more are at risk of severe illness from COVID.[3]  With a height of six feet and a weight of 248 pounds, Defendant has a BMI greater than thirty, which qualifies as obese. Additionally, according to the CDC, based on the evidence available at this time, people with hypertension might be at increased risk of severe illness from COVID-19.[4]  Defendant—who has two

---

1. See Coronavirus Disease 2019 (COVID-19) – People at Increased Risk of Severe Illness – People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed October 23, 2020).
2. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (last accessed October 23, 2020).
3. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last accessed October 23, 2020).
4. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-

underlying medical conditions that place him at greater risk and one condition that may increase his risk of serious illness or death from COVID-19—remains at risk of imminent harm.  In its response, the Government concedes that Defendant's diagnosis of chronic kidney disease establishes the extraordinary and compelling circumstances exist justifying his release.  Resp. 11.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving a 120-month term of imprisonment for one count of aiding and abetting the distribution of 5 grams or more of actual methamphetamine.

Defendant has been in custody since his arrest on a related state court case on February 10, 2018.  According to BOP records, Defendant is scheduled to be released on August 19, 2026.  In his pro se motion, Defendant sets forth a reentry plan which includes living with his mother and his children.  The Probation Office has investigated Defendant's proposed residence if he is released and has concluded that the residence is acceptable.  The Court has considered the factors in § 3553(a) and concludes that they entitle

---

risk.html#heart-conditions (last accessed October 23, 2020).

Defendant to compassionate release.

2. <u>Sentencing Commission Policy Statements</u>

The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[5] U.S.S.G. § 1B1.13 cmt. n.1. One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the

---

5. The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here. No sentencing policy provides guidance for when a defendant files a motion. Nevertheless, the Court still considers § 1B1.13.

ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D).  As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling reason presented by the COVID-19 pandemic.

In this case, Defendant has contracted COVID-19, having tested positive for the coronavirus on October 2, 2020.  On April 24, 2020, the World Health Organization (WHO) issued a scientific brief saying that the public belief that a one-time infection leads to immunity remains unproven and is unreliable as a basis for response to the pandemic.  See WHO, "Immunity Passports" in the Context of COVID-19, https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19 (last accessed October 23, 2020).  Specifically, the WHO says that "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a

second infection." Id.  Given the dramatic increase in confirmed cases of COVID-19 at FCI Greenville from the time of the filing of Defendant's pro se motion to today, and based on the currently available scientific data, Defendant continues to be at risk of imminent harm based on his underlying medical conditions.

The first confirmed case of COVID-19 reinfection has already occurred in the U.S., and in that case, the affected individual suffered more severe results from the subsequent reinfection than he did from the original infection.  See Mia Jankowicz, Business Insider, "A Nevada man was reinfected with the coronavirus—the first confirmed case in the US—and the 2nd time was worse," available at https://www.businessinsider.com/nevada-man-first-confirmed-american-coronavirus-reinfection-2020-10 (last accessed October 23, 2020).  For someone like Defendant, who has been diagnosed with two underlying medical conditions that increase the risks of COVID-19, the possibility of reinfection presents a very real and immediate danger.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.  If released, if Defendant quarantines himself and practices

social distancing, that will diminish the risk of spreading the virus. Although Defendant has prior convictions for domestic battery, he also has not received any disciplinary infractions while in BOP custody. Additionally, Defendant has completed a drug education class and educational coursework focused on reentry during his time in custody.

Therefore, the Court finds that Defendant has satisfied all requirements for compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Dominic Hood's Amended Motion for Compassionate Release (d/e 163) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this case from 120 months to time served plus ten days.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend six months in home confinement, with the first fourteen days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. During his term of home confinement, Defendant shall be monitored by telephone until such time as it is practicable to implement electronic monitoring. All other aspects of

Defendant's sentence shall remain the same.  Defendant's pro se motion for compassionate release (d/e 149) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to place Defendant in isolation immediately and to keep Defendant in isolation for ten days before retesting him for COVID-19.  The Bureau of Prisons is DIRECTED to provide the test results to the Court and to the attorneys for the parties.  If Defendant tests negative at that time, BOP is DIRECTED to immediately release Defendant.  If Defendant tests positive, the Court will set a further hearing on the matter.  The Clerk is DIRECTED to send a copy of this Opinion to FCI Greenville.

Defendant must further observe a fourteen-day isolation period beginning at the time of his release, including while he travels from FCI Greenville to his residence.  Defendant shall travel to his residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and

gloves.

ENTER:  October 23, 2020

                                        */s/ Sue E. Myerscough*
                                        SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE